IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JOHN D. CRAWFORD, JERRY CRAWFORD,
and MARTHA PROCTOR, Individually and
As the Personal Representative of JOE BEN
ASHBY, Jr.,

       Plaintiffs,

v.                                                            Civil No. 02-0386 WJ/JHG

KAREN L. PARSONS, MARK TAYLOR,
LEE GRIFFIN, ANNE ASHBY, R. JACK
AYERS, Jr., and CONTINENTAL
ASSURANCE COMPANY, d.b.a.
CNA STRUCTURED SETTLEMENTS, INC.,

       Defendants.

## MEMORANDUM OPINION AND ORDER

       This MATTER comes before the Court upon Defendant Griffin's Motion to Dismiss, filed May 6, 2002 (**Doc. 16**); Defendant Parson's Motion to Dismiss, filed May 7, 2002 (**Doc. 17**); Defendant Taylor's Motion to Dismiss, filed May 10, 2002 (**Doc. 20**); Defendant Ashby's Motion to Dismiss, filed May 14, 2002 (**Doc. 26**); Defendant Ayer's Motion to Dismiss, filed May 29, 2002 (**Doc. 30);** and Defendant Ayer's Motion to Adopt by Reference Defendant Ashby's Motion to Dismiss, filed May 29, 2002 (**Doc. 32**). Having considered all the pleadings, memoranda and other materials submitted by the parties, as well as the applicable law, I find that Defendants' motions are well-taken and will be granted thereby dismissing with prejudice all of Plaintiffs' claims.

**Background**

Events leading up to the filing of this case arise from the ongoing aftermath of an "unsavory" state court battle over the control and final disposition of the estate of the late Joe Ben "Jodie" Ashby[1], who was a resident of Lincoln County, New Mexico. In mid-January 2001, Mr. Ashby suffered an accidental brain injury.[2] On March 14, 2001, Mr. Ashby's daughter Anne Ashby, a Texas District Court Judge who lives in Dallas, filed on behalf of her father a guardianship and conservatorship case in the Twelfth Judicial District Court, County of Lincoln, State of New Mexico. The guardianship and conservatorship case was assigned to New Mexico District Court Judge Karen L. Parsons. On March 14, 2001, Judge Parsons granted an ex parte application appointing Anne Ashby temporary guardian and conservator for Mr. Ashby for a period of no longer than sixty days pending a final hearing on Anne Ashby's petition.

Plaintiffs John D. Crawford and Jerry Crawford were apparently long-time friends of Mr. Ashby. John Crawford, who is an attorney, had assisted Mr. Ashby in 1998 in investing the proceeds from a sizable judgment received in a lawsuit against State Farm Insurance Company after his auto parts warehouse was destroyed by fire. Martha Proctor[3] apparently had a relationship with Mr. Ashby before he sustained his head injury, although the record is not clear as

---

[1] "Jodie" is also referred to as "Jody" in the pleadings. The factual background on the various characters in this scenario are gleaned from the record, although the parties differ significantly as to the motives behind the undisputed actions that took place.

[2] The injuries may have been related to a skiing accident, although it is not clear from the record.

[3] Martha Proctor was originally a named plaintiff in the above captioned lawsuit; however, after obtaining independent counsel she wisely decided to voluntarily dismiss pursuant to Fed.R.Civ.P. 41(a)(1) (*Doc. 7*).

to the length or extent of the relationship. What the record does establish is that about two weeks after Judge Parsons entered the order appointing Anne Ashby temporary guardian and conservator of Jodie Ashby, Martha Proctor married Mr. Ashby at a ceremony witnessed by John and Jerry Crawford. Judge Parsons later found that although Mr. Crawford was present when the couple applied for their marriage license, there was no disclosure of the legal impediment posed by the guardianship and conservatorship action.

Attorney Lee Griffin was the court appointed guardian ad litem for Jodie Ashby. In early April 2001, on a motion by Attorney Griffin in his capacity as guardian ad litem, Judge Parsons entered an ex parte temporary restraining order ("TRO") to prevent the Crawfords, and in particular John Crawford, from interfering with the court orders filed in the guardianship and conservatorship action. During the last two weeks of April 2001, John Crawford took a number of actions characterized by Defendants as attempts to gain control over Mr. Ashby's property, for the purpose of naming Mr. Crawford as Trustee and Martha Proctor as beneficiary. John Crawford contacted Jodie Ashby to discuss his financial affairs and attempted to effect a change in the payee provisions of the annuity administered by Defendant Continental Assurance Company d/b/a CNA Structured Settlements, Inc. ("CNA") in a structured settlement.[4] Also within this time period, allegedly through John Crawford's doing, Jodie Ashby was decertified as an incapacitated person.[5]

---

[4] CNA refused to honor the request because of the court orders in the conservatorship and guardianship action appointing Anne Ashby as temporary guardian.

[5] This reference to a "decertification" of Mr. Ashby can found in Defendants' pleadings, e.g., Defendant Taylor's Motion to Dismiss (Doc. 21, at 4). I am not exactly sure what is meant by the term "decertification" of an incompetent person. There is nothing in the record to suggest that the guardianship and conservatorship for Mr. Ashby was terminated before his death.

At a hearing on a motion for an order to show cause on April 24, 2001, the Crawfords were given notice and an opportunity to be heard in the proceedings. Mr. Crawford appeared before the Twelfth Judicial District Court and admitted to various violations of the TRO, and offered to comply with its restrictions if they were modified. Judge Parsons extended the TRO, allowing the Crawfords supervised visits with Jodie Ashby, but restricted the Crawfords from discussing either the conservatorship and guardianship action or Mr. Ashby's financial affairs. Martha Proctor was under the same restrictions.

The record indicates that Mr. Crawford continued to disregard the restrictions imposed by the modified TRO. He again approached CNA about changing the payee provisions of the annuity, but was again unsuccessful. He also directed plans to liquidate a stock account owned by the trust and paid the balance of the mortgage on Mr. Ashby's residence, which Martha Proctor purportedly was to receive, subject to the mortgage, following Mr. Ashby's death. Although Anne Ashby was authorized to manage her father's financial affairs, John Crawford used sales proceeds from the stock to pay off Mr. Ashby's debts. John Crawford wrote a check for $30,653.85 payable to Martha Proctor as "Trustee" of the Jodie Ashby Trust, and mailed a check for $1,500.00 to guardian ad litem Lee Griffin.[6]

Unaware of John Crawford's late activities, the parties entered into a comprehensive settlement agreement in late May. The agreement provided that Martha Proctor was to receive certain property, including the Ashby residence, subject to a mortgage. Ms. Proctor waived any claim to a personal property allowance and any right to claim part of the CNA annuity. Instead,

---

[6] According to Mark Taylor's affidavit, the check for $30,653.85 was later authorized by the court to be turned over to Anne Ashby to pay for litigation expenses. *Ex. 2, Doc. 21*. Similarly, Mr. Griffin did not cash his check until advised by the Court that it could be applied toward his attorney fees. *Ex. 5*.

4

Anne Ashby was to receive the annuity and was appointed permanent successor trustee of the Jodie Ashby Trust. When Mr. Crawford's continuing intrusions into Mr. Ashby's affairs came to light, Anne Ashby, through her attorneys Mark Taylor and Jack Ayers, filed a motion to enforce the settlement agreement. In the order following hearings on this motion, Judge Parsons confirmed Anne Ashby's status as permanent guardian and conservator and successor trustee and confirmed the provisions regarding the disposition of estate assets as previously agreed by the parties. In addition, the court found that John Crawford, with others, intentionally violated the court's TRO, that his conduct was "in derogation" of the settlement agreement and constituted a "wrongful conversion of Mr. Ashby's funds." *Ex. 4, Doc. 21 ("Order Enforcing Settlement Agreement, August 9, 2001)* ["August 9th Order"].[7]

Defendants describe the Plaintiffs in the present lawsuit -- the Crawfords in particular -- as disgruntled state court litigants who inserted themselves into the state court proceedings and are now trying for a different result in a federal forum. The complaint, on the other hand, casts Anne Ashby in the role of an only child and daughter whose father had indulged her every whim, and who feared that the relationship between Martha Proctor and Jodie Ashby would result in a reduction of Anne Ashby's inheritance. The complaint states that Anne Ashby purportedly took measures, including "purchas[ing] the services of a medical doctor to certify that her father was incompetent and could not manage his financial affairs," in order to limit her father's right to "determine the disposition of his assets" during his lifetime and upon his death. *Compl., ¶ 12*.

---

[7] John Crawford attempted to make Martha Proctor the life estate owner of Mr. Ashby's Trust after his death and to name himself successor trustee of the "Jodie Ashby Trust". The August 9th Order also made a finding that the marriage between Mr. Ashby and Martha Proctor was considered to be a binding marriage, which would allow Martha Proctor an opportunity to benefit from additional social security benefits upon Jodie Ashby's death.

Plaintiffs contend that Defendants sought to keep the Crawfords away from Jodie Ashby in order to prevent the Crawfords from helping Mr. Ashby change the beneficiary of his will and trust from Anne Ashby to Martha Proctor.

Attached to the Complaint is a document entitled "Second Complete Restatement of Trust Agreement of the Jodie Ashby Trust" which states that it was made on the Grantor's (Jodie Ashby) decertification as mentally incompetent and names John Crawford as trustee of the Jodie Ashby Trust. *Compl., Ex. 2.* The instrument, which was dated July 16, 2001,[8] gives a history of the creation of the trust and reasons why it was Mr. Ashby's desire to make his wife Martha the beneficiary of his Will and Trust.[9] According to the statements in the document, Anne Ashby had "unduly influenced" Mr. Ashby to sign an earlier will and trust agreement from July 1999. *Ex. 2, at 3.* Mr. Ashby also stated in this document that he later requested that the beneficiary be changed to Martha Proctor, although it was never done.

The restatement describes Martha as a "loving wife" who had been an "enjoyable friend" for over 10 years, but had always turned down Mr. Ashby's earlier marriage proposals because of "bad experiences" she had with a previous husband. In the document, Mr. Ashby also recognized

---

[8] Defendants contend that Mr. Crawford induced Mr. Ashby to sign this restatement, which appoints Mr. Crawford as trustee and approves of the change of beneficiary to Martha Proctor, sometime in April 2001. However, the instrument appears to have been executed July 16, 2001.

[9] The document states that "Anne [was afforded] several expensive horses, tack, riding arena, tack room, riding costumes and horse trailers and an expensive convertible automobile while she was growing up," was taken "all over the county . . . to compete in riding events; was given a "more expensive Pontiac Grand Prix automobile while paying for her to get a law degree," and that Mr. Ashby and his friends "helped Anne to become a Judge." *Ex. 2 at 1-2.* Mr. Ashby describes Anne Ashby's financial situation as "pretty well fixed" and goes on to compare that with Martha Proctor's less enviable educational and financial situation. Mr. Ashby states in the document that "[s]omething has to be done to stop Anne and teach her that she has to accept No when she selfishly wants everything and more of what I worked for my whole life." *Ex. 2 at 6.*

that since the accident, Martha was the person who contended with his physical disabilities, and who would "clean up my bowel messes and run the washer and dryer around the clock to clean my cloths, bed and couch linens." *Ex. 2 at 3*. Martha fixed his meals and took him to health care visits, while continuing to work at her job in Carrizozo, which was over 30 miles from her residence. Mr. Ashby purportedly went on to state that his wife had some difficulty taking care of all his health care needs because Anne "continues to interfere with my health care." *Ex. 2 at 6*.[10]

In addition to suffering from a head injury, Jodie Ashby was also suffering from cancer when he died died shortly after the hearings that resulted in the entry of the August 9th Order. Plaintiffs have filed notices of appeals in the New Mexico Court of Appeals which are presently pending. Recently, the New Mexico Supreme Court denied the Crawfords' Petition for a Writ of Prohibition or Superintending Control which alleged several due process violations and Judge Parsons' failure to recuse. A motion for rehearing of that denial was still pending at the time the briefs on the instant motions were filed. Furthermore, the August 9th Order reserved the right to "fashion remedies" to address John Crawford's conduct, ordering that another judge be assigned to hear the contempt proceedings against him. *Doc. 21, Ex. 4 at 20*.

**Discussion**

The Complaint alleges First Amendment and Due Process claims, under 42 U.S.C. § 1983, as well as various state claims.[11] Plaintiffs seek compensatory and punitive damages, a rescission

---

[10] Attached to the Complaint is a letter dated April 14, 2001 written by a medical doctor who had visited Mr. Ashby in the Ruidoso clinic and observed that he was "extremely depressed" because he was not allowed to visit with any of his friends who came to see him. The letter requests that Anne Ashby "withdraw the restraining order and allow him to spend the rest of his time being as happy as possible." *Ex. 1*.

[11] The state claims are as follows: conversion against Defendants Taylor and Griffin based on their use of the checks written by Mr. Crawford; deceit against Mr. Griffin; breach of contract

7

of the settlement agreement, and an extinguishing of the judicial lien against Martha Proctor's real property.[12]

Dismissal is inappropriate under Fed.R.Civ.P. 12(b)(6) unless a plaintiff can prove no set of facts in support of his claims to entitle him to relief. *Id*. The Court must accept as true all the factual allegations in the complaint, construe them in a light most favorable to the plaintiff, and resolve all reasonable inferences in plaintiff's favor. *Seamons v. Snow*, 84 F.3d 1226, 1231-1232 (10th Cir. 1996). The main thrust of Defendants' argument is that summary dismissal of the federal claims is warranted under the *Rooker-Feldman* doctrine because the merits of those claims are "inextricably intertwined" with the issues in the state court proceedings which are still on appeal. I agree with Defendants. Furthermore, in considering the federal claims, I find that dismissal is appropriate because Plaintiffs cannot, under any construction of the facts, meet either of the two conditions which must be met in order to bring an action under 42 U.S.C. § 1983: (1) Defendants must have acted under color of state law; (2) Defendants' actions must deprive Plaintiffs of some right, privilege or immunity protected by the Constitution or the law of the United States. *See Northington v. Jackson*, 973 F.2d 1518, 1523 (10th Cir. 1992).

***Rooker-Feldman* Doctrine**

The *Rooker-Feldman* abstention doctrine bars a party losing in state court from seeking judicial review of a state court decision in federal district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights. *See Kiowa Indian Tribe of Okla.*

---

against Defendants Ashby and Continental Assurance; malicious abuse of process against Defendants Ashby, Griffin, Taylor and Ayers, Jr., breach of fiduciary duty against and Ashby and CNA; and negligence against CNA.

[12] Because all of Defendants' motions to dismiss are based on common facts and legal arguments, the motions will be regarded as a collective motion except where indicated.

8

v. Hoover, Jr., et al., 150 F.3d 1163, 1169 (10th Cir. 1998); *District of Columbia Court of Appeals v. Feldman*, 460 U.S. 462, 476 (1983).[13] A federal district court has jurisdiction over general constitutional challenges if these claims are not "inextricably intertwined" with the claims asserted in state court. *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (citations omitted). A claim is "inextricably intertwined"

> if the federal claim succeeds only to the extent that the state court wrongly decided the issues before it. In other words, *Rooker-Feldman* precludes a federal action if the relief requested in the federal action would effectively reverse the state court decision or void its ruling.

*Id*. (citations omitted). Plaintiffs seek exactly the type of relief which brings their claims under the *Rooker-Feldman* doctrine. Their federal claims of due process and first amendment are thinly disguised efforts to seek an undoing of the state court's August 9th Order and a voiding of the judicial lien entered by Judge Parsons in the state court proceedings. *See Fielder et al., v. Credit Acceptance Corp.*, 188 F.3d 1031, 1035 (8th Cir. 1999) (no procedural due process exception to *Rooker-Feldman* rule).

Similarly, the remaining state law claims against Defendants Taylor, Ayers, Jr., and Griffin must go the way of the federal claims under the *Rooker-Feldman* doctrine, since the rule extends not only to constitutional claims presented or adjudicated by the state courts but also to any claims that are "inextricably intertwined" with the state court judgment. *Cmp.*, *Feldman*, 460 U.S. at 482-83 n.16, *cited in Ritter v. Ross, et al.,* 992 F.2d 750, 753 (7th Cir. 1993) (barring claims that were not even argued in state court but were "inextricably intertwined" with the state court judgment); *Jordahl v. Democratic Party of Virginia et al.*, 122 F.3d 192, 199 (4th Cir.

---

[13] *See also Rooker v. Fidelity Trust Co.*, 263 U.S. 413, 44 S.Ct. 149, 68 L.Ed. 362 (1923).

1997); *Charchenko v. City of Stillwater*, 47 F.3d 981, 983 (8th Cir. 1995) (barring state law claims under Rooker-Feldman).

Plaintiffs are correct that the *Rooker-Feldman* doctrine does not apply to non-parties. *See Johnson v. DeGrandy*, 512 U.S. 997 (1994) (*Rooker-Feldman* doctrine did not bar judicial review of state court proceeding in federal court where United States was not a party); *Johnson v. Orazco*, 226 F.3d 1103, 1108 (10th Cir. 2000) (holding that court erred in dismissing biological father's complaint in state adoption proceeding under *Rooker-Feldman* doctrine, because father was not involved in those proceedings); *Snider v City of Excelsior Springs*, 154 F.3d 809, 811 (8th Cir. 1998). However, although Plaintiffs were not parties to the state court conservatorship and guardianship action at the time of its filing, Plaintiffs in this federal action can hardly claim that they were not parties to the state proceedings below. They were parties to a temporary restraining order, a settlement agreement and a court order enforcing this agreement. The state court rulings were directed against the Crawfords and Martha Proctor personally, and they have appealed these adverse rulings in state court and used them as a basis for their allegations in this federal case.[14] Thus, this case is not properly before this Court and should be dismissed under the *Rooker-Feldman* doctrine.

Defendants raise alternative arguments to dismissal, to which I now turn.

---

[14] Plaintiffs also contend that *Rooker-Feldman* does not apply because they have no adequate forum within the state guardian and conservatorship proceeding in which to litigate claims of malicious abuse of process. This contention is without merit. Although they were not parties to the guardianship and conservatorship proceeding at the time of its filing, as indicated above, they were parties to the collateral proceedings in which they participated extensively. *See Doc. 21, Ex. 4 at 6*. Further, as Defendants point out, Plaintiffs could have raised a counterclaim for malicious abuse of process in the original state proceedings since New Mexico does not recognize favorable termination [in the original proceeding] as an element of a cause of action for malicious abuse of process. *See DeVaney v. Thriftway Marketing Corp.*,124 N. M. 512, 521, *cert. denied*, 524 U.S. 915 (1998).

*Claims against Defendant Parsons*

The Crawfords allege First Amendment and Due Process claims against Judge Parsons, in that by entering the TRO, she deprived them of free association and liberty in their right to visit Jodie Ashby.[15] However, Defendant Parsons, a state court judge, is entitled to judicial immunity from all of Plaintiffs' claims. The Crawfords' argument that Judge Parsons acted outside her judicial authority when she entered a temporary restraining order against the Crawfords fails as a matter of law. As the presiding judge in the guardianship and conservatorship proceeding, Judge Parsons was well within her judicial authority to enter orders to prevent the Crawfords from taking advantage of Mr. Ashby, an incapacitated person. A judge will be subject to liability only when he or she has acted in the "clear absence of all jurisdiction." *Stump v. Sparkman*, 35 U.S. 349, 356-57.

The Crawfords allege in the Complaint that in the ex parte application for the TRO, Attorney Griffin "falsely swore under oath" that he did not know how to contact the Crawfords. *Compl., § 14*. Even so, Attorney Griffin's alleged misrepresentation to the court did not affect Judge Parson's ability to exercise jurisdiction over the Crawfords as "adverse parties" to a temporary restraining order under Rule 1-066, N.M.R.A (2002). Moreover, the Crawfords appeared at the order to show cause hearing when the court considered an extension of the TRO, they admitted to various violations of the restraining order and they assured the court that they

---

[15] Martha Proctor's federal claim against Defendant Parsons is based on the allegation that Judge Parson's orders, particularly the placing of a judicial lien on her real property deprived her of property in the absence of notice and an opportunity to be heard. However, since Martha Proctor voluntarily dismissed her claims in this case pursuant to Fed. R. Civ. P. 41(a)(1) (Doc. 7), I need not consider her claims.

understood and would abide by the modified order.[16]

Plaintiffs' focus on the question of personal jurisdiction is misplaced. In determining whether a judge is immune for his or her acts, the critical inquiry is whether the judge has subject matter jurisdiction rather than personal jurisdiction over the party. *Crabtree by and through Crabtree v. Muchmore*, 904 F.2d 1475, 1476 (10th Cir. 1990) (affirming judgment in favor of defendant judge on grounds of absolute immunity where civil rights claim was brought against judge in state court proceedings over a trust fund owned by plaintiff's children); *Stump*, 435 U.S. at 355-56 & n.6.[17] Even an assumption that Judge Parsons' rulings were in error would not be grounds to deprive her of absolute immunity. *See Stump*, 435 U.S., at 356 ("If judicial immunity means anything, it means that a judge will not be deprived of immunity because the action [she] he took was in error. . . or was in excess of [her] authority"). Plaintiffs do not challenge the existence of subject matter jurisdiction over the state court proceeding, nor would such a challenge be successful. Therefore, judicial immunity warrants the dismissal of all of Plaintiffs' claims against Defendant Parsons.

*§ 1983 Claims Against Defendant Ashby*

The "under color of state law" requirement is a jurisdictional requisite for a 1983 action. *Jojola et al. v. Chavez, et al.*, 55 F.3d 488 (10th Cir. 1995); *Polk County v. Dodson*, 454 U.S.

---

[16] By way of support, Plaintiffs offer case law involving "third parties" to restraining orders, which is not the case here, since the Crawfords were not "third parties."

[17] Other courts follow the same analysis, e.g., *Ashelman v. Pope*, 793 F.2d 1072, 1076 (9th Cir. 1986) (to determine if judge acted with jurisdiction, courts focus on whether judge was acting clearly beyond scope of subject matter jurisdiction in contrast to personal jurisdiction; where not clearly lacking subject-matter jurisdiction, judge is entitled to immunity even if there were no personal jurisdiction over complaining party); *Tucker v. Outwater*, 118 F.3d 930 (2nd cir. 1997); *Figueroa v. Blackburn*, 208 F.3d 435 (3rd Cir. 2000); *King v. Myers*, 973 F.2d 354, 356-57 (4th Cir. 1992); *Adams v. McIlhany*, 764 F.2d 294, 298 (5th Cir. 1985); *John v. Barron*, 897 F.2d 1387 (7th Cir. 1990).

312, 315 (1981). Plaintiffs' §1983 claims against Defendant Ashby must be dismissed because Anne Ashby's role as guardian or conservator does not constitute acting "under color of state law." *Cmp., e.g., Meeker v. Kercher*, 782 F.2d 153, 155 (10th Cir.1986) (per curiam) (holding guardian ad litems not state actors under § 1983). Thus, Plaintiff cannot bring a claim under § 1983 against Defendant Ashby.[18]

*Allegation of § 1983 Claims in General*

Not only have Plaintiffs failed to show that Defendants acted under color of state law; they also have not alleged claims which are recognized as deprivations of a right, privilege or immunity protected by the Constitution or the law of the United States. Plaintiffs, unhappy with the result in an estate matter in which all the parties were heavily invested -- emotionally as well as financially -- are grasping at legal straws.

No spin on the facts presented would convert the allegations into viable § 1983 claims. The First Amendment does not envision protection from a restraining order which attempts to prevent individuals from interfering with a state court guardianship and conservatorship created to protect an incapacitated person. Nor does the First Amendment or Due Process Clause offer litigants a way to challenge the undesired effects of a court order enforcing a settlement

---

[18] Plaintiffs allege constitutional violations against only Defendants Parsons and Ashby. Although Defendant Parsons, as a judge acting in her judicial capacity, is a state actor under color of state law, Plaintiffs' § 1983 claims against her are being dismissed on the basis of judicial immunity. *See Dennis v. Sparks*, 449 U.S. 24, 28 n. 5 (1980). Any allegations of a federal nature against any of the other Defendants would also be dismissed, as none of them are state actors for purposes of § 1983. *See, e.g., Polk County v. Dodson*, 454 U.S. 312, 318 (1981) (holding private attorneys are not state actors under § 1983); *Adickes v. S .H. Kress & Co.*, 398 U.S. 144, 150 (1970) (holding that § 1983 does not reach purely private conduct). None of the Defendants, including Defendant Ashby, can be said to have acted as a "willful participant in joint activity with the State or its agents." *See Adickes v. S.H. Kress & Co*., 398 U.S. 144, 152 (1970). Nor did their actions have a "sufficiently close nexus" to the state so that they could be attributable to the state itself. *See Jackson v. Metropolitan Edison Co*., 419 U.S. 345, 351 (1974).

agreement in which they voluntarily participated. Accordingly, I find that Plaintiffs' have not met the threshold requirements for § 1983 claims.

*No Supplemental Jurisdiction over State Claims*

Under this alternative analysis regarding Plaintiffs' §1983 claims, I find that Plaintiffs' failure to assert a basis for federal jurisdiction leaves this Court without supplemental jurisdiction to consider the state claims under 28 U.S.C. §1367. I note the docket in this case indicates that Defendant CNA has not filed any motions, or entered an appearance. It is not clear whether this Defendant was even served. Nevertheless, the disposition of Plaintiffs' claims as to the other Defendants would also apply to the state claims asserted against Defendant CNA; i.e., federal judicial review of those claims is barred under *Rooker-Feldman*, and, alternatively, this Court has no supplemental jurisdiction over those claims based on a lack of jurisdiction under 28 U.S.C. § 1331.

**Conclusion**

For the reasons set forth herein, Plaintiffs' claims shall be dismissed with prejudice. Finally, based on the glaring and obvious deficiencies in the alleged federal claims, I am left with the impression that Plaintiffs John and Jerry Crawford's filing of this federal lawsuit was a "knee-jerk" response to the state court's handling of the Jodie Ashby estate, which was adverse to their interest in the estate. This federal lawsuit nevertheless required the individual Defendants to mount a significant defense in terms of the instant motions, while they are simultaneously litigating with Plaintiffs the same substantive claims before the New Mexico Court of Appeals and the New Mexico Supreme Court. Accordingly, Defendants may wish to seek reimbursement for their time and expense involved in the preparing and filing of the instant motions to dismiss, and thus, are invited to do so by filing the appropriate motions.

**THEREFORE**,

**IT IS ORDERED** that Defendant Griffin's Motion to Dismiss (**Doc. 16**) is hereby GRANTED for lack of jurisdiction;

**IT IS FURTHER ORDERED** that Defendant Parsons' Motion to Dismiss (**Doc. 17**) is hereby GRANTED for lack of jurisdiction and on the basis of judicial immunity;

**IT IS FURTHER ORDERED** that Defendant Taylor's Motion to Dismiss (**Doc. 20**) is hereby GRANTED for lack of jurisdiction;

**IT IS FURTHER ORDERED** that Defendant Ashby's Motion to Dismiss (**Doc. 26**) is hereby GRANTED for lack of jurisdiction;

**IT IS FURTHER ORDERED** that Defendant Ayer's Motion to Adopt by Reference Defendant Ashby's Motion to Dismiss **(Doc. 32)** is hereby GRANTED;

**IT IS FURTHER ORDERED** that Defendant Ayer's Motion to Dismiss (**Doc. 30**) is hereby GRANTED for lack of jurisdiction;

**IT IS FINALLY ORDERED** that the findings and conclusions in this Memorandum Opinion and Order effectively dispose of the above-captioned case in its entirety, THEREBY DISMISSING WITH PREJUDICE ALL OF PLAINTIFFS' CLAIMS.

_____
UNITED STATES DISTRICT JUDGE